MICHIGAN BEAN COMPANY v SENN

Docket No. 78-4018. Submitted June 22, 1979, at Lansing.—Decided
November 6, 1979.

Plaintiff, Michigan Bean Company, entered into a contract with
defendant, John Senn, for the purchase of navy beans under
the following terms: 90,000 pounds per year for three years at a
given price per hundredweight, delivered on or before a date
certain each year with title to pass upon delivery. The agree-
ment, supplied by plaintiff, allowed plaintiff to cancel the
agreement if defendant was unable to complete delivery by the
specified date or if defendant failed to notify plaintiff in ad-
vance of any encumbrances. It provided alternatively that
plaintiff could extend the delivery date with defendant's con-
sent. It also contained a liquidated damages clause in the event
of a breach by defendant. The first year defendant tendered
timely performance. A second contract was made, identical to
the first in all other respects, for the delivery and purchase of
another 60,000 pounds in the year 1973. Nearly two months
prior to the second year delivery deadline defendant notified
plaintiff that he would be unable to deliver his quota. Defen-
dant ultimately delivered less than 40,000 pounds of beans.
Plaintiff sued defendant for breach of contract for the deficient
delivery. Defendant admitted the contracts but denied any
breach and raised the affirmative defense of impossibility of
performance, contending that the contracts called for him to
produce the beans as a grower and did not require him to act
as a broker and that he was unable to perform due to extreme
weather conditions. A year later plaintiff amended its com-
plaint to allege a failure of delivery for the third year. Defen-
dant amended his answer and denied the existence of the
contracts and moved for summary judgment, arguing that the
agreements constituted only unaccepted and wholly revocable

REFERENCES FOR POINTS IN HEADNOTES

[1] 15A Am Jur 2d, Commercial Code § 6.
  17 Am Jur 2d, Contracts §§ 102, 103, 107.
[2] 17 Am Jur 2d, Contracts § 276.
[3] 17 Am Jur 2d, Contracts §§ 260, 261.

unilateral offers. The Saginaw Circuit Court, Gary R. Mc-
Donald, J., denied the motion, ruling that the agreements were
enforceable, indivisible broker's contracts. After a bench trial
on the issue of damages the court entered judgment for plaintiff
based on the liquidated damages provision. Defendant appeals
alleging failure of mutual consideration and error in refusing
to allow him to assert his defense of impossibility of perform-
ance. *Held:*

1. The Uniform Commerical Code—Sales creates an obliga-
tion on the part of a contract purchaser to accept and pay for
the goods in accordance with the contract and this obligation is
sufficient consideration to support the contract. The agreements
are valid, enforceable contracts.

2. The contracts were not specifically delineated broker's
contracts or grower's contracts. Both parol and extrinsic evi-
dence should have been admissible to supplement and explain
the contracts.

Reversed and remanded.

1. Sales — Contracts — Consideration — Uniform Commercial
Code.

The Uniform Commercial Code—Sales creates an obligation on
the part of a contract purchaser to accept and pay for the goods
in accordance with the contract and this obligation is sufficient
consideration to support the contract (MCL 440.2301; MSA
19.2301).

2. Contracts — Construction of Contracts — Ambiguities.

Ambiguities in a contract are to be construed against the party
who drafted it.

3. Sales — Contracts — Uniform Commercial Code.

The Uniform Commercial Code—Sales provides that a sales con-
tract's terms may be supplemented or explained by parol and
other extrinsic evidence related to course of performance,
course of dealing or usage of trade regardless of whether or not
the court has made a specific finding that an ambiguity exists
(MCL 440.2202; MSA 19.2202).

*John A. McColgan,* for plaintiff.

*Allan C. Schmid* and *Craig H. Dill,* for defen-
dant.

Before: Cynar, P.J., and MacKenzie and L. W. Corkin,* JJ.

Cynar, P. J. Defendant appeals as of right a judgment entered September 29, 1978, in favor of plaintiff in the amount of $29,612.30, with interest.

On February 25, 1972, plaintiff and defendant signed a form supplied by plaintiff, which was captioned "Navy Bean Sale and Purchase Agreement". According to the terms thereof, defendant was to deliver 90,000 pounds net weight of CHP grade navy beans at the price of $9 per cwt. each year for a three-year period commencing in 1972, said deliveries to be made on or before October 31 of each year. Title to the commodity was to pass to plaintiff at the time delivery was made. Plaintiff was entitled to cancel the agreement if defendant was unable to complete delivery by the specified date or if defendant failed to notify plaintiff in advance of any encumbrances on the goods. Alternatively, plaintiff could elect to extend the delivery date, provided defendant assented thereto. The agreement also contained a liquidated damages clause, operative upon a breach of the agreement by defendant.

For the year 1972, defendant tendered full performance in a timely fashion, and was paid according to the agreed-upon rate. In February of 1973, the parties signed a second agreement, on a form identical to the one used previously, again supplied by plaintiff. This agreement called for defendant to deliver an additional 60,000 pounds on or before October 31, 1973, but was otherwise indistinguishable from the first. The effect was to increase the 1973 requirement to 150,000 pounds.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Early in September 1973, defendant realized that he would be unable to deliver his quota. He conveyed this information to an agent of plaintiff. Subsequent negotiations relating to an extension of defendant's time for performance proved fruitless, and plaintiff indicated its intention to seek damages for the shortfall in quantity delivered. Defendant was able to supply plaintiff with somewhat less than 40,000 pounds out of the 150,000 pound quota.

On March 1, 1974, plaintiff filed a complaint alleging breach of contract by defendant with respect to the 1973 delivery deficit. Defendant answered, admitting the existence of both contracts, but denying any breach thereof on his part. Defendant raised as an affirmative defense impossibility of performance, contending that the contracts called for him to produce the commodity as a grower and did not oblige him to act as a broker and that, due to abnormally extreme weather conditions, it was literally impossible for him to carry out the terms of the contracts.

On January 8, 1975, plaintiff amended its complaint, praying for additional damages as a result of defendant's failure to deliver any quantity of beans in 1974. Defendant, by leave of the trial court, was allowed to amend his answer so as to deny the existence of any contracts. Following this, defendant moved for summary judgment, arguing that the purchase agreements constituted only unaccepted and wholly revocable unilateral offers as opposed to bilateral contracts. Said motion was denied, the trial court ruling that the agreements represented enforceable, indivisible broker contracts. A bench trial was then held solely on the issue of damages. The above-noted award to plaintiff was based upon the liquidated damages provisions in the two contracts.

Initially, defendant argues that the forms he signed are void for want of mutuality of consideration. Since plaintiff made no promises of legal consequence in either document, they are illusory and unenforceable as contracts. Plaintiff never obligated itself to purchase the beans from defendant.

Conversely, plaintiff claims that the documents constitute validly executed bilateral contracts. Plaintiff was impliedly obligated by law to pay for the goods upon delivery, even though no express promise was incorporated into the forms. We agree with plaintiff.

As the contracts in question were for the sale of goods, Article 2 of the Uniform Commercial Code applies. MCL 440.2102; MSA 19.2102. Under MCL 440.2204(1); MSA 19.2204(1), a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by the parties which recognizes the existence of a contract. Under subsection (3) of this provision, a contract for sale will not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for granting a proper remedy, notwithstanding the fact that one or more terms are left open.

Reviewing the circumstances surrounding this transaction, we find that the agreements in question spoke to quantity, price, date and place of delivery, passing of title, warranty of title, cancellation and extension rights, assignment of rights and obligations, and contained a liquidated damages clause to be effective upon a breach of contract by defendant. Applying the above code provisions, we conclude that the parties intended to make a contract, and that there was a reasonably certain basis under the agreement for granting an

appropriate remedy to either party thereto. In addition, no essential terms were left open. Moreover, the conduct of the parties most assuredly recognizes the existence of the contracts, *i.e.,* full performance by both parties in the first year of the original agreement, and partial performance by both defendant and plaintiff the second year, as well as protracted, although unsuccessful, negotiations with regard to modifying the terms of both agreements insofar as they dealt with defendant's performance for the year 1973.

More importantly, under MCL 440.2301; MSA 19.2301, an implied obligation is imposed upon the plaintiff-purchaser in this case to accept and pay for the commodity in accordance with the terms of the agreements, even though such obligation is not expressed in the forms signed by the parties. Thus, plaintiff would be in breach of contract if it refused to accept and pay for the beans delivered by defendant as per the contract. Since plaintiff was so obligated, defendant's claim that that mutuality of consideration was lacking is rendered nugatory. *Maryland Supreme Corp v The Blake Co,* 279 Md 531; 369 A2d 1017 (1977), *cf.,* White and Summers, Uniform Commercial Code (1st ed), § 3-5, pp 89, 91, *Domas v Rossi,* 52 Mich App 311, 315-316; 217 NW2d 75 (1974).

Next, we are confronted with defendant's allegation that the trial court erred in refusing to allow him to assert the defense of impossibility of performance (in reality, a defense of commercial impracticability). Such refusal was predicated upon the court's ruling that the agreements constituted broker's rather than grower's contracts. Defendant assails this conclusion as error also and further argues that parol evidence should have been admitted to show that the quota under each contract

was to be filled, if at all, solely from crops grown by defendant. Defendant finally contends that extrinsic evidence relating to course of performance, as well as of course of dealing and usage of trade, should also have been admitted and that the refusal of the trial court to allow this mandates reversal.

Plaintiff argues that the forms signed by the parties represented the complete and exclusive expression of their agreement. To have allowed defendant to assert the defense of impossibility of performance would contradict the terms of the documents, in violation of the parol evidence rule. The agreement did not limit the source from which defendant was to fill the quota, but, on the contrary, allowed defendant to do so in any manner so long as he had merchantable title to the commodity at the time of delivery.

At the outset, we note that the forms, supplied by plaintiff, contain no language which would indicate that they were intended as a complete and exclusive statement of the terms of the agreement. Thus, they cannot, on their face, operate as a barrier to allowing parol evidence in under MCL 440.2202; MSA 19.2202.[1]

Additionally, since plaintiff supplied the stan-

---

[1] The above-cited provision is the parol evidence rule applicable to contracts for the sale of goods under Article 2 of the Uniform Commercial Code, and provides:

"Sec. 2202. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

"(a) by course of dealing or usage of trade (section 1205) or by course of performance (section 2208); and

"(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement. 1962 PA 174, § 2202, eff. Jan. 1, 1964."

dardized forms which became the written memoranda evidencing the agreements, they are subject to the general rule of construction, that, where ambiguities exist in a contract, they are to be construed against the draftsman. *Soloman v Western Hills Development Co,* 88 Mich App 254, 256-257; 276 NW2d 577 (1979). Therefore, we decline to infer any intent by the parties to integrate their entire argument into the writings. As such, subsection (b) of MCL 440.2202 is inapplicable to the agreements before us insofar as it would bar the admission of parol or extrinsic evidence.

Nor is the language of the memorandums so unequivocal as to admit of only one conclusion, *i.e.,* that the agreements were broker's contracts as opposed to grower's contracts. This fact would alone be sufficient to create an ambiguity with respect to this question. However, under § 2202, a finding that the wording of a contract is ambiguous is not a prerequisite to the admission of parol evidence or other extrinsic evidence related to course of performance, course of dealing or usage of trade.[2] *Campbell v Hostetter Farms, Inc,* 251 Pa

---

[2] The official comment on the section by the commissioners on Uniform State Laws, the draftspersons of the legislation, adopts this position, stating:

"1. This section definitely rejects:

\* \* \*

"(c) The requirement that a condition precedent to the admissibility of the type of evidence specified in paragraph (a) is an original determination by the court that the language used is ambiguous.

"2. Paragraph (a) makes admissible evidence of course of dealing, usage of trade and course of performance to explain or supplement the terms of any writing stating the agreement of the parties in order that the true understanding of the parties as to the agreement may be reached. Such writings are to be read on the assumption that the course of prior dealings between the parties and the usages of trade were taken for granted when the document was phrased. Unless carefully negated they have become an element of the meaning of the words used. Similarly, the course of actual performance by the parties is considered the best indication of what they intended the writing to mean."

Super 232; 380 A2d 463 (1977), *cf., Flamm v Scherer,* 40 Mich App 1, 7; 198 NW2d 702 (1972). Whether or not an ambiguity existed with respect to the nature of the contracts, both parol and extrinsic evidence were admissible to supplement and explain the agreement.

Having so concluded, we find as error the trial judge's ruling that, as a matter of law, the contracts were broker's contracts, which ruling had the further effect of erroneously excluding evidence of the parties' course of dealing, the course of performance under the agreements, as well as usage of trade. The judge finally ordered stricken defendant's defense of impossibility of performance, such ruling being consistent with a finding that the agreements were broker's contracts. Since the ruling with regard to the species of contracts involved was error, the striking of defendant's affirmative defense was also a ground for reversal.

The questions of whether the agreements were grower's rather than broker's contracts and ensuing damages, if any, are properly questions of fact to be resolved after presentation of all relevant evidence. On remand, if the trier of fact finds the agreements to be grower's contracts, then whether defendant's performance can be excused under MCL 440.2615; MSA 19.2615 is also a factual question.

Our resolution of these questions makes it unnecessary for us to address the remaining contentions of the parties. Reversed and remanded for further proceedings consistent with this opinion. Costs to defendant.