In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.

EAGLE–PICHER INDUSTRIES, INC. et al., Plaintiffs,

v.

CONTROLLED POWER COMPANY, Defendant.

Bankruptcy No. 1–91–00100.
Adv. No. 93–1070.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

April 27, 1995.

Michael F. Haverkamp, Cincinnati, OH, for plaintiffs.

M. Lynn Readey, Dayton, OH, John E.F. Gerlach, Detroit, MI, for defendant.

## DECISION AND ORDER ON MOTION SUMMARY JUDGMENT RE CLAIM OF CONTROLLED POWER COMPANY

BURTON PERLMAN, Bankruptcy Judge.

A creditor, Controlled Power Company ("CPC"), filed claim # 3553 in these consolidated cases in the amount of $7 million. In support of its claim, CPC attached a copy of a complaint which it had filed in a U.S. District Court, allegedly causes of action against Eagle–Picher for breach of warranty, breach of contract, and misrepresentation of facts in connection with a contract pursuant to which Eagle–Picher provided electrical batteries to CPC. (The claim is made specifically against debtor Eagle–Picher Industries, Inc., and it will be understood when reference is made herein to debtor that it is that entity to which reference is made.) Debtor has filed an objection to the claim, thereby initiating a contested matter, the procedure of which is dictated by F.R.B.P. 9014. The matter came on for pretrial conference. At that time, it was agreed to bifurcate the question of breach of warranty from that of product defect. Debtor has filed a motion for summary judgment on the issue of breach of warranty to which CPC has responded. It is that motion which is now before the court.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(B).

On the record made in this motion for summary judgment, we find the following facts. The business of CPC was the sale to various industrial users of Uninterruptable Power System units ("UPS"). Customers of CPC installed the UPS system into their computer systems. CPC assembled these units from various components. Each unit included a battery. The present controversy arises from batteries supplied by debtor to CPC. Prior to entering into a relationship with debtor, CPC had been purchasing batteries from Yuasa Battery America, but started looking for a different source because Yuasa was raising its prices.

Debtor employed an outside sales representative, Joel M. Storchan. At the beginning of 1988, Storchan approached CPC in an effort to secure for debtor the battery business for the UPS units of CPC. An extended period of negotiations then ensued, culminating when, on September 21, 1988, CPC in writing placed a blanket order for debtor's batteries. During the protracted period in 1988 between the beginning of 1988 and September, 1988, there were contacts between the parties and Storchan.

On June 8, 1988, Storchan faxed a memorandum to Siemers of CPC which said "Warranty policy also enclosed." (DX N. p. 8.) The pertinent language from the enclosure reads:

### LIMITED WARRANTY

Every CAREFREE battery has been carefully inspected and tested before shipment. Accordingly, we warrant each CAREFREE battery which is sold, against defects in workmanship and material under normal use and recommended charging methods for a period of 1 year after date of manufacture. Our obligation under this warranty shall be limited to the repair or replacement, FOB factory, of any CAREFREE battery which is returned as a complete unit to the factory within the 1 year warranty period, transportation charges prepaid, and which proves to our satisfaction, upon examination, to be defective. This warranty shall not extend to and we shall have no responsibility with respect to products which have been abused, misused or altered, or as to which repair has been made or attempted by others. BATTERIES THAT HAVE BEEN SEVERELY DISCHARGED OR SEVERELY OVERCHARGED ARE NOT COVERED UNDER WARRANTY. THIS WARRANTY IS MADE IN LIEU OF ALL OTHER WARRANTIES WITH RESPECT TO THE PRODUCT COVERED HEREBY AND THERE ARE NO OTHER WARRANTIES, WHETHER EXPRESSED, OR IMPLIED, OF MERCHANTABILITY OR OTHERWISE, EXCEPT THE WARRANTY EXPRESSLY STATED HEREIN, THE REMEDY SET FORTH HEREIN SHALL BE THE SOLE EXCLUSIVE REMEDY OF ANY PURCHASER WITH RESPECT TO ANY DEFECTIVE PRODUCT. Under no circumstances shall we be liable for any injury, loss, damage or expense suffered or incurred with respect to any defective product.

Siemers of CPC then requested a proration of the warranty policy if the battery failed after the one-year warranty period. Debtor refused to alter its warranty policy. (DX O.)

A sheet upon which was imprinted debtor's Limited Warranty language was shipped with each battery. CPC then utilized the batteries by assembling them into its UPS units. In December, 1988, debtor began shipping batteries to CPC. In 1989, customers of CPC began experiencing difficulties with their UPS units, and the claim of CPC against debtor arises because of complaints about the performance of batteries supplied by debtor to CPC.

To reach a conclusion in the present controversy between the parties, we must analyze their actions by application of the pertinent provisions of the Uniform Commercial Code ("UCC") as adopted in Michigan to govern sales transactions such as the pres-

ent.[1] Debtor seeks to persuade us that its Limited Warranty, which limits recovery for breach of warranty to repair or replacement, is enforceable against CPC for either of two reasons. First, debtor argues that it was part of the agreement between the parties. Alternatively, debtor argues that claimant was sufficiently made aware of the Limited Warranty that by the terms of the UCC, claimant is bound by it.

■ A resolution of debtor's first argument entails application of MCL § 440.2202, which incorporates UCC § 2–202 verbatim into the law of Michigan, and also MCC § 440.2719, which incorporates UCC § 2–719. As correctly asserted by claimant, it is the law in Michigan, to be found in *Challenge Machinery Co. v. Mattison Machine Works,* 138 Mich.App. 15, 359 N.W.2d 232 (1984), that the written documents, debtor's price quotation and claimant's purchase order constitute an offer and acceptance. Claimant contends further that they comprise the entire agreement, and the Limited Warranty cannot be part of the agreement. Resolution of this element of the controversy involves a two-step analysis. The first step requires a determination whether, under the law of Michigan, parol evidence is admissible that the Limited Warranty was intended by the parties to be part of the agreement between the parties, or whether such evidence is barred by MCL § 440.2202. MCL § 440.2202 states the circumstances under which evidence may be introduced to prove that a provision not in the writing between the parties, was intended to be part of the sales agreement between the parties. MCL § 440.2202 (UCC § 2–202) states:

**MCL § 440.2202. Final written expression; parol or extrinsic evidence.**

Sec. 2202. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (section 1205) [fn 1] or by course of performance (section 2208) [fn 2]; and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

[fn 1] Section 440.1205.

[fn 2] Section 440.2208.

■ Upon a review of the evidence before us, we conclude that in the present case parol evidence is admissible, because there was no language in the written documents indicating that they were intended "as a complete and exclusive statement of the terms of the agreement" between the parties. Such documents thus would not operate to bar parol evidence. *Michigan Bean v. Senn,* 93 Mich. App. 440, 287 N.W.2d 257 (1979).

■ The second step in the analysis of whether the Limited Warranty became part of the agreement between the parties has to do with the quality of the evidence required to justify such a conclusion. This brings into play a different section of the UCC, MCL § 440.2719 (UCC § 2.719):

**MCL § 440.2719. Contractual modification or limitation of remedies.**

Sec. 2719. (1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essen-

---

**1.** The parties have agreed that the law of Michi-

gan shall apply.

tial purpose, remedy may be had as provided in this act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Upon application of this provision we conclude that debtor cannot succeed on this motion for summary judgment in establishing that its Limited Warranty was part of the agreement between the parties. Its parol evidence, as we have stated, showed that claimant was sent the Limited Warranty and the parties negotiated about its terms. What debtor's evidence does not show is that the terms of the Limited Warranty were "expressly agreed" to by the parties, as required by MCL § 440.2719(1)(b). Our search of case law discloses no authority which suggests that that language does not mean exactly what it says.

 While we have found that debtor cannot succeed on its motion for summary judgment on the ground that its Limited Warranty consensually became part of the sales agreement, there is an alternative basis for enforcement of the Limited Warranty presented by debtor. That basis invokes MCL § 440.2316 (UCC § 2–316):

§ 440.2316. **Exclusion or modification of warranties.**

Sec. 2316. (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (section 2202) [fn 1], negation or limitation is inoperative to the extent that such construction is unreasonable.

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

\* \* \* \* \* \*

[fn 1] Section 440.1205.

Thus, the UCC permits the unilateral limitation of warranties by words or conduct. In the case before us we look to MCL § 440.2316 because of debtor's argument that its Limited Warranty was packed with each battery, thereby becoming applicable to claimant. In such a case, the UCC requires, where there is reliance upon a writing, that the writing be conspicuous. From what is before us on this motion, we cannot say that debtor is entitled to summary judgment because of the writings accompanying the batteries shipped to CPC, for the reason that this record does not show that the transmission of the Limited Warranty was reasonably calculated to make CPC aware of it. In the present case, batteries were shipped to claimant and both parties knew that the batteries would be repackaged into CPC's UPS units. Under those circumstances it well might be that the Limited Warranty never came to the attention of any responsible individual at CPC. We must conclude, therefore, that there is an issue of fact as to whether the writings containing the Limited Warranty were "conspicuous" for purposes of the UCC.

In the light of the foregoing discussion, debtor's motion for summary judgment is denied.

So Ordered.